```
 1                   UNITED STATES DISTRICT COURT
                      MIDDLE DISTRICT OF FLORIDA
 2                          ORLANDO DIVISION

 3                     Docket No. 6:14-CR-175

 4   . . . . . . . . . . . . . . .
     UNITED STATES OF AMERICA    :
 5                               :          Orlando, Florida
              Plaintiff          :          January 26, 2015
 6                               :          2:19 p.m.
                   v.            :
 7                               :
     MATTHEW C. GRAZIOTTI        :
 8                               :
              Defendant          :
 9   . . . . . . . . . . . . . . .

10

11                   TRANSCRIPT OF SENTENCING
            BEFORE THE HONORABLE ROY B. DALTON, JR.
12                 UNITED STATES DISTRICT JUDGE

13

14   APPEARANCES:

15

16   For the Plaintiff:  Karen L. Gable

17

18   For the Defendant:  Angela Parrott

19

20

21
     Court Reporter:    Amie R. First, RMR, CRR
22                      AmieFirst.CourtReporter@gmail.com

23

24   Proceedings recorded by mechanical stenography.

25   Transcript produced by Computer-Aided Transcription.
```

```
 1                    P R O C E E D I N G S
 2          THE COURT:  United States of America versus
 3   Matthew Graziotti, Case Number 6:14-CR-175.  We're here for
 4   a sentencing.
 5          Karen Gable on behalf of the United States.
 6          MS. GABLE:  Good afternoon.
 7          THE COURT:  Good afternoon, Miss Gable.  Do you
 8   want to introduce your case agent?
 9          MS. GABLE:  Yes, Your Honor.  I'm here with
10   Special Agent Alyson Samuels of the F.B.I.
11          MS. SAMUELS:  Good afternoon, Your Honor.
12          THE COURT:  Welcome, Agent Samuels.
13          And good afternoon, again, Miss Parrott.  Angela
14   Parrott of the federal defender's office on behalf of
15   Mr. Graziotti.
16          And the Court notes Mr. Graziotti's presence.
17          As well as Lisa Kindel is here from the United
18   States Probation Office.  Thank you for being here.
19          Matthew Graziotti, on October 30, 2014, you
20   entered a plea of guilty to counts one through seven of an
21   indictment that charged you with the sexual exploitation of
22   a minor, in violation of Title 18, United States Code,
23   Section 2251(a) and (e).
24          Count eight of that indictment charged you with
25   the distribution of child pornography, in violation of
```

```
 1    Title 18, United States Code, Section 2252A(a)(2)(A) and

 2    (b)(1).

 3            And count nine charged you with the possession of

 4    child pornography, in violation of Title 18, United States

 5    Code, Section 2252A(a)(5)(B) and (b)(2).

 6            The Court accepted your plea of guilty,

 7    adjudicates you guilty of those offenses.

 8            We're now at the stage of the proceedings where

 9    it's my duty to make a determination as to the appropriate

10    sentences for those offenses.

11            Miss Parrott, have you had an opportunity to

12    review the presentence report and to go over it with

13    Mr. Graziotti?

14            MS. PARROTT:  Yes, I have, Your Honor.

15            THE COURT:  Are there any objections to the

16    factual findings or the probation office's computation of

17    the guidelines?

18            MS. PARROTT:  No, Your Honor.

19            THE COURT:  And, Miss Gable, has the United States

20    had an opportunity to review the PSR?

21            MS. GABLE:  Yes, Your Honor.

22            THE COURT:  Do you have any objections to either

23    the factual findings or the computation of the guidelines?

24            MS. GABLE:  No, Your Honor.

25            THE COURT:  All right.  In the absence, then, of
```

1    any objections to the factual statements and guideline

2    calculations contained in the presentence report, the Court

3    adopts those statements as its findings of fact and

4    determines the advisory guidelines in accordance with the

5    United States Sentencing Commission result in a total

6    offense level of 43.  That's actually the cap.  The actual

7    offense level was 50, but it's capped at 43.

8            Criminal history category is I, resultant

9    guideline term of imprisonment is 250 years, term of

10   supervised release ranging from 5 years to life.

11   Restitution is not applicable.  Fine ranging from $25,000

12   to $250,000, and a $900 special assessment.

13           Miss Gable, is the United States aware of any

14   victims present in the courtroom that wish to address the

15   Court?

16           MS. GABLE:  Yes, Your Honor.

17           THE COURT:  All right.  Would you like to take

18   over responsibility for calling those?  And I'm happy to

19   hear from however many of them wish to address the Court.

20           MS. GABLE:  Thank you, Your Honor.  Is it okay if

21   they address the Court from the podium?

22           THE COURT:  Yes.  The podium would be fine.

23           MS. GABLE:  Thank you.

24           THE COURT:  Yes, ma'am.  If you'd just come to the

25   podium and pull that microphone to you and speak directly

1    into it.

2          And let me have your name.  And then I'm happy to

3    hear from you.

4          MS. GABLE:  Your Honor, the witness, may she

5    provide the Court with her initials because --

6          THE COURT:  Surely.

7          MS. GABLE:  -- the child -- thank you very much.

8          THE COURT:  Surely.  Yeah, anybody that wants to

9    introduce themselves by way of initials for privacy

10   purposes, that's more than appropriate.

11         MS. GABLE:  Okay.  It's T.C.

12         THE COURT:  All right.  Thank you, ma'am.

13         THE WITNESS:  I stand here not as just a coworker

14   of Matt's or his assistant at camp but as Matt's friend, as

15   Matt's best friend, the one person who always had his back

16   and probably the one person who cared for him more than

17   anybody else in this courtroom did, the one person who

18   fought for him and was with him at all times.  But more

19   importantly, I stand here as a mother of not just one but

20   two of Matt's victims.

21         I read everything that was submitted as his

22   defense or his life story.  I knew about his relationship

23   with his father and why he moved to Georgia.  But who

24   couldn't say they had a less-than-perfect childhood?

25         That doesn't give you an excuse to commit crimes,

1    especially these kinds of acts, acts against innocent

2    children who had no way to defend themselves.

3            He's an adult who willingly chose to commit these

4    crimes and by choosing to commit these crimes he chose the

5    consequences that come along with it.

6            He chose --

7            THE COURT:  Ma'am, could you read just a little

8    more slowly?  The court reporter is working very feverishly

9    to keep up with you.

10           THE WITNESS:  I'm nervous.

11           He chose a lifetime behind bars the minute he

12   chose to abuse a child, to record that abuse, and to send

13   those recordings out to other people.

14           My kids did not choose to become a victim.  My

15   kids didn't get a choice in this matter.  He took that from

16   them.  He stole their innocence, their sense of trust in

17   people.

18           This might be the first time he's been arrested or

19   the first time he's been in trouble with the law, but this

20   is not a first offense.  A first offense is not almost

21   9,000 pictures on a computer or evidence of yourself

22   abusing 29 different kids.  It's just the first time he's

23   been caught.  And that is a big difference.

24           It says that he knew he had a mental disease but

25   was fearful to seek treatment, the help he knew he needed.

1    Yet he continuously inserted himself into situations with

2    children.  He did this by being a teacher, a summer camp

3    director, involved with the Scouts, coaching sports, a

4    youth group leader.

5         Every time he had -- every weekend that he had his

6    son he had his son's friend spend the night.  I used to

7    think it was because he didn't know how to interact one on

8    one with him.  But hindsight is 20/20.  And now I know it

9    was so he could have access to my sons and to the sons of

10   other parents.

11        These are not the actions of someone who wanted

12   help for his illness.  These are the actions of someone who

13   did everything he could do to indulge his illness.

14        They're claiming that he's an ashamed and

15   remorseful man.  But how can he genuinely be remorseful

16   when he has no clue as to the damage he has caused?  No

17   clue how what he has done has affected the school or what

18   is now my summer camp, no idea what damage he's inflicted

19   on my sons, the therapy I have been through, the therapy my

20   sons are going through, the fact that my older son failed a

21   suicide assessment having admitted to writing a suicide

22   note.  He has no idea what it's like as a parent to sit

23   there and be told that.  Or to have to sign pictures of

24   your child as a way to positively identify your sons.

25        That changes you as a person and as a person in

1    general.  That takes a piece of you away that you can never

2    get back.

3            He claims to be sincere with his apology to the

4    victims, to the parents of the victims, and to me.  Yet he

5    still had the nerve to ask me for a character reference on

6    his behalf.  He asked me to attest to his character.

7            How can I attest to the man he is?  How can I

8    possibly speak about this person in a positive manner?

9    Everything I thought he was was an absolute false

10   representation of the man he really is.

11           I don't know the man that's sitting in court

12   today.  I only knew the man that he presented himself to

13   be.  I'm assuming he asked me that because he chose -- I

14   would still choose him, fight for him, defend him over

15   everything else, as I mistakenly did for years.

16           But he judged me wrong.  I would never choose

17   anyone, including him, over my children.  I will fight for

18   my kids and their rights until my dying day.

19           Every parent wants to and tries their hardest to

20   protect their children from the evil that is in this world,

21   from the exact evil that is sitting in this courtroom.

22           I tried to do that with my kids, and I failed

23   them.  I failed them because I trusted someone who turned

24   out to be the exact thing that I had been trying to protect

25   them from.

1    I trusted someone who turned out to be the

2  complete opposite of what he portrayed himself to be, which

3  was someone who looked out for the well-being of kids,

4  someone who supposedly cared about me, who cared about my

5  kids, who loved my kids.  And I was wrong.

6    I thought I had a sixth sense when it came to

7  people like Matt due to my own childhood and what my family

8  went through, a subject that Matt and I spoke of on

9  numerous occasions.  But please give me the peace of mind

10  to protect them and other children from this man who is

11  sitting here today.

12    Matt has broken me, but Matt will not break my

13  children.  He bent them, he damaged them, but with the

14  grace of God and years of therapy they will heal.  They

15  will move on.

16    It hasn't been easy.  It will never be easy.  But

17  I'm determined to not allow Matt to define my boys or who

18  they become.

19    I'm asking you, as a mother who loves her sons

20  more than anything else in this world and as someone who

21  loved Matt as my friend, who allowed him to be part of my

22  family, to not show him any leniency in this.

23    It breaks my heart and crushes me to the very core

24  of who I am and it is the absolute hardest thing I've ever

25  had to do as a friend, but I'm asking you to never allow

 1  him the opportunity to be around children again, to not

 2  give him the hope for freedom in his later years of life as

 3  he has asked.

 4          I'm begging you to allow me to give my children

 5  that hope, hope from freedom from Matt.  The chance to be

 6  able to close the door on this chapter in their life

 7  without the worry of it ever being back open, to allow them

 8  to start the next chapter of their life with the hope of

 9  healing and knowing that Matt will never be let back out in

10  society.

11          People like Matt, people with this illness, they

12  don't ever change.  The man he was six months ago is the

13  same man he'll be in fifteen years.  So I'm begging you to

14  give my children hope and not Matt.

15          THE COURT:  Thank you, ma'am.

16          MS. GABLE:  Your Honor, this is J.W.

17          THE COURT:  All right.  Yes, sir.

18          THE WITNESS:  You know, I have a saying, you only

19  get one chance to be a parent.  When you decide to have

20  children, many things go through your head.  99 percent are

21  happy thoughts, and you have the 1 percent of thoughts that

22  includes for the most part protecting your children from

23  this very situation.

24          In July 2015, my life changed forever for me and

25  my family.  I think every day what I could have done

```
 1   different to prevent this from happening, but I keep coming

 2   up empty on answers.

 3          I'm a protector with my family and friends.  I

 4   have a very small circle of people I allow my kids to be

 5   around for this very reason.

 6          I was fooled.  I was deceived.  And I failed at

 7   the one job I took the most pride in, and that is

 8   protecting my kids.

 9          Our life will never be the same.  I can never

10   trust like I had before.  Being in public with my kids

11   drives me nuts knowing that somebody could be taking

12   pictures with their phone.

13          I look at my boy every day and think of this

14   person.  I can't do anything with my kids without this

15   situation burrowing through the happiness that is going on

16   all around me.

17          I really am -- I really am hoping that the Court

18   takes into account the lasting effects that this will have

19   on our lives.  And although most of this will be put into a

20   file and soon forgotten, for us, it's never going to

21   disappear or be put in a file and tucked away in a drawer.

22          This case is a turning point in our lives.  We're

23   not going to dwell on the past, but I'll learn what to

24   watch for in the future.

25          This type of sickness is proven to have no cure,
```

1    and I am pleased that he was caught and we saved many more

2    children and families from feeling the pain he's caused.

3         The law will not allow the punishment needed for

4    this type of offense, but I'm hoping what needs to be done

5    will be done.

6         Although I have changed my way of thinking with

7    people and the type of people I'm around with my kids, I

8    can say that after today our life will not be lost in

9    thoughts of him and what he's done.  Our thoughts from here

10   on out will be to be happy.  He did not and will not change

11   the path we've worked so hard to build for our kids.

12        We were fooled and deceived.  And we may have

13   failed, but we also will move on to conquer the demons with

14   this.  Our family will survive and move forward in the path

15   that we have chosen to follow.

16        After today, you'll have zero effect on what we do

17   in the future.

18        That's it.

19        MS. GABLE:  Thank you.

20        THE COURT:  Thank you, sir.

21        MS. GABLE:  Your Honor, this is J.C.

22        THE COURT:  Yes, ma'am.  If you'll speak directly

23   into that microphone, it helps me hear you.  Thank you.

24        THE WITNESS:  Okay.  I've done a lot of thinking

25   and praying over what to say today.  Am I surprised?  Not

```
 1   really.  He had a master plan that started long before we
 2   met.
 3              I'm sorry.
 4              THE COURT:  That's all right.  Just take a minute.
 5   Do the best you can.
 6              Are there some tissues out there, Miss Gable?
 7              MS. GABLE:  Are you okay?
 8              We're fine.  Thank you.
 9              THE WITNESS:  I'm sorry.  Excuse me.  I'm sorry.
10              I remember countless times you telling me how
11   passionate you were about children.  It wasn't children.
12   It was boys.  It makes sense now.  It was a life-long
13   pursuit to satisfy your own sexual perversion at the
14   expense of our children.
15              Is it a coincidence that after struggling with
16   infertility early in our marriage, you pursued foster care
17   seeking a young boy?  I wanted a baby.  You were adamant
18   that it be a boy.
19              You were given a million chances, Matt.  I would
20   have stood by you had you been willing to get help.  And
21   you know it.
22              So many opportunities to change.  So many
23   counselors.  Even our own pastor would have done anything
24   in the world to help you.  You refused.
25              A long time ago, you made a choice to seek after
```

```
 1   young boys.  And nothing would deter you from that one
 2   goal.
 3            Do you have any idea the tremendous suffering you
 4   have caused?  The intense pain, hurt, confusion, shame, and
 5   fear these children have to live with for the rest of their
 6   lives?
 7            And what about my son?  What did you do to him?
 8            No.  I'm sorry.
 9            Tell me.  What did you do?  What did he see in
10   your home?  Why is he incredibly fearful of the dark,
11   hallucinating, ashamed to be in public?  Having fits of
12   rage and uncontrollable crying.
13            Do you know how difficult it is to explain to my
14   11-year-old son that the man he thought was his father was,
15   in fact, a liar, a manipulator, excuse me, a sexual
16   predator, and child molester for decades?
17            If you truly are remorseful, why don't you admit
18   what you did to him and countless other unknown victims so
19   they can have a chance to get help and recover.
20            My son is severely damaged and struggling daily
21   because of your wicked selfish choices.  Then you have the
22   audacity and arrogance to ask for open communication with
23   my son.
24            What are you thinking?  Thank God we intercepted
25   the card you sent to our home for him.  Don't ever contact
```

1    my son again.  Ever.  Leave him alone.  You lost the

2    privilege of being a father.

3            God is so awesome, though.  He knew the

4    destructive path you had chosen.  So in his infinite

5    wisdom, he brought my husband into our lives.  What a

6    precious gift.

7            For the first time in his life, my son has a

8    father, an amazing Godly man who loves and cares for him

9    and will protect him at all costs.  My husband is the main

10   reason my son even has a fighting chance at recovering from

11   this trauma.

12           Your sin has consequences.  Stand up and take your

13   punishment like a man.  Don't try to get out of it.  If you

14   are honest with yourself, you know prison for the rest of

15   your life is the only way that our children will be safe.

16           You are not a remorseful man.  You are angry that

17   you got caught and can no longer indulge in your sexual

18   perversions.

19           You are evil.  Controlled by Satan himself.  Only

20   God knows the extent of the horrific crimes you committed

21   against children.  You are not a Christian, not a father,

22   not a husband, not a mentor, not a camp counselor, not a

23   day care worker, not a Christian school teacher, not a

24   youth pastor, not a summer day camp director.

25           You were and are a sexual predator who used God's

1   name to cover your true intentions and abuse young boys.

2   Your life was a lie.  It was nothing more than a

3   premeditated life-long assault on our children.

4         To those of us who have been impacted by this

5   tragedy, to the children whose lives will never be the

6   same, to the parents whose hearts are forever broken, I

7   pray you find encouragement in knowing this was not from

8   God but rather an act of Satan to destroy us.

9         God loves you infinitely more than you can ever

10  imagine.  He knows our hearts.  He sees our tears.  He

11  hears our cries.  And he will heal us.  We are broken, but

12  our faith will not be shaken.  Our hope is in God alone.

13  We will not be defeated.

14        Satan will not win.  No, I don't know how.  I

15  believe God will take this awful mess and use it for our

16  good and for His glory.

17        Whatever you do, don't let what this man did turn

18  you away from Jesus.  That would be the greatest tragedy of

19  all.

20        By God's grace, we will overcome and go on to live

21  happy, healthy, whole, productive lives.  I pray this for

22  each of you.

23        Your Honor, I beg you to sentence this man to life

24  in prison.  Do not be manipulated or deceived by him.  You

25  know the statistics.  Pedophiles don't change.  If you let

```
 1   him out, he will do it again.  Please do the right thing

 2   and prohibit Matthew Graziotti from ever having access to

 3   children again.

 4          Lastly, regardless of the outcome today in this

 5   courtroom, Matt, you will stand before God one day and

 6   answer to him directly for the unimaginable evil you have

 7   done to children.  God have mercy on your soul.

 8          In time and with God's help, I will choose to

 9   forgive you.  Your future rests in God's hands.  His will,

10   not mine, be done.

11          THE COURT:  Thank you, ma'am.

12          MS. GABLE:  This is L.S., Your Honor.

13          THE COURT:  Yes, ma'am.  Just, again, if you could

14   speak directly into the microphone, please.  Thank you.

15          THE WITNESS:  Yes, sir.  Even though I felt

16   compelled --

17          THE COURT:  Just before you start, because I don't

18   want to interrupt you; but if you read, if you could try to

19   read with a measured pace, again, so the court reporter can

20   keep up with you.

21          THE WITNESS:  Okay.  Even though I felt compelled

22   from the very beginning to speak here today, it took me a

23   very long time to be able to put into words exactly how I

24   feel.

25          My head filled with so many words and emotions
```

1    that every time I began to put something on paper it was

2    all a jumbled mess.  I needed a lot of time to unravel them

3    enough to be able to communicate them to you today.

4         Mr. Graziotti came into our lives as an educator

5    at our son's school.  When our son was in first grade, we

6    realized that we had a mutual friend outside of the school,

7    and we began to talk.

8         Over the next few years, we became friends.  His

9    son and our son are the same age and had been good friends

10   since kindergarten.  My husband and I immediately felt very

11   comfortable in his presence.  And we felt that we were of

12   like mind when it came to raising and educating children.

13   He was very easy to talk to.  He was charming, had a good

14   sense of humor.

15        We quickly came to trust him and respect him for

16   the roles that he played in the lives of the children in

17   our community.

18        When our son was in fourth grade, he suggested

19   that a sleepover for the kids would be a fun time for them.

20   And we felt very comfortable and happily agreed.

21        By the time our son reached fifth grade, I had

22   specifically requested that he be placed in his class.  A

23   second sleepover took place during this year.  Again, no

24   concerns.  We were comfortable in where our child was for

25   the night.

```
 1            I pride myself in being a pretty good judge of

 2     character.  However, in this case, I failed myself.  And,

 3     most importantly, I failed my son.

 4            Matt Graziotti will forever cause me to

 5     second-guess my judgment.  This man took advantage of our

 6     son when he was most vulnerable, when he was asleep.  He

 7     was 11 at the time.  He was innocent, trusting.  The F.B.I.

 8     showed him the pictures of him that were found on the

 9     computer.  He's innocent no more.

10            And I'm not sure how you ever trust anyone again

11     after that.  He's not asked to go on a sleepover since.

12            The level of pain, anguish, rage, and hate that we

13     feel towards this man will forever reside deep inside.  The

14     only comfort that we feel is in the hope that this man will

15     never feel freedom again.  He will never have the

16     opportunity to hurt anyone again.  And he will never be a

17     father to his son again.

18            In the sentencing memorandum filed by the

19     defendant requesting a downward variance of his sentence,

20     Miss Parrott states that in considering the length of the

21     sentence that you hand down, you must consider

22     Mr. Graziotti's personal characteristics.

23            So let's do that.  He is manipulative, conniving,

24     and deceptive.  In short, he is a predator.  One who preys

25     on the most innocent.  And worst of all, he used his own
```

1    son as bait for his prey.  These are the characteristics

2    that I implore you to consider.

3           We ask you that you impose the maximum sentence as

4    you are in a unique position to make a statement to the

5    world with this man.

6           Each of us, all of these families that he's

7    devastated, we can shout from the rooftops that men like

8    him, with his problem, need to stop being abusers, get help

9    for their problems, or the consequences will be dire.

10          But only you combined with the extensive media

11   coverage that this case is getting can truly drive home the

12   message that our children are not put on this earth for

13   their pleasure.  The message that when you dare to injure

14   and prey upon our most innocent and sacred treasures, that

15   the consequence is forever.

16          Mr. Graziotti laid out a very nice plan for

17   himself as long as you are willing to give him leniency.

18   He spoke of living out his older years on a farm with his

19   family.  This all sounds very nice, very cozy.  What it is

20   is a very nice story.

21          It is a -- our entire community bought his story

22   once.  He convinced us all that he was a great, caring,

23   Christian human being who truly cared about the children's

24   welfare.  We were all deceived by this man.  We only ask

25   that you not allow him to deceive you, too.

1    Our son feels betrayed.  I originally told my son

2 that I would be speaking today and that I wanted him to put

3 down some words that he would like Mr. Graziotti to hear.

4 I felt like he needed to have his say as well.

5    Then later we became concerned if I spoke in court

6 today, because of media coverage, that his identity might

7 be discovered.

8    I told him that there were other ways of

9 communicating his words.  For example, that we could have

10 the prosecutor read a letter and not reveal the identity of

11 the writer, albeit Mr. Graziotti would not know the writer

12 either.

13    Our son immediately responded, I don't care if

14 they find out who I am.  He needs to hear my words, and he

15 needs to hear them from you.

16    So here are our son's words:

17    How?  How could you do this to any child of any

18 age?  I'm angry that you did this to me.  I will have to

19 live with this for the rest of my life.

20    I trusted you, and you let me down.  You were a

21 pastor, a teacher, and a role model to me.  And you

22 completely took advantage of my trust.

23    In looking back, I realize that you are an abuser,

24 and you have emotionally or physically abused everyone

25 around you.  I find comfort in that you are going to jail

```
 1    for the rest of your life because I know that you won't be

 2    able to hurt anyone else.

 3              My son says to you, Your Honor, I am asking you to

 4    give him the maximum sentence so maybe other abusers will

 5    see that they will go to jail for the rest of their lives

 6    and they will stop doing this to other children.

 7              Thank you.

 8              THE COURT:  Thank you.

 9              MS. GABLE:  I think that's it, Your Honor.  Thank

10    you very much.

11              THE COURT:  All right.  Thank you, Miss Gable.

12              MR. KRUPPENBACHER:  Excuse me, Your Honor.  May we

13    approach?

14              MS. GABLE:  Your Honor, this is D.W.

15              THE COURT:  All right.  Yes, sir.  If you come to

16    the podium and speak directly into the microphone.

17              MR. KRUPPENBACHER:  Frank Kruppenbacher, Morgan &

18    Morgan.  It's T., T.W., for the record.

19              THE COURT:  T.W.  Thank you.

20              THE WITNESS:  I'm going to try to keep this short

21    and sweet, Matt.  That will be the last time that I use

22    your name until you get your new name which will now be a

23    number.  I will refer to you as inmate 666.

24              When I say we, I am referring to all the other

25    victims, my children, their parents, and myself.
```

1       This wasn't some random act of sickness.  This is

2   where you baited all of us.  We trusted you as a teacher at

3   Warner, a summer camp director, and a youth pastor at

4   Edgewater Alliance, and then befriended us all.

5       It sickens me that you called me two weeks before

6   the F.B.I. brought you down to ask me if my child could

7   spend the weekend with you and your child.  Thank God my

8   son was spending the weekend at his grandmother's.  Who

9   knows what you would have done to my child again.

10      How many have you hurt that are not on your

11  personally known list?

12      And you have the nerve to ask for a lighter

13  sentence, 15 to 30 years.  At least 29 victims.  Should

14  Your Honor give a lousy ten years per victim, that's

15  290 years, inmate 666.

16      I will now go home to hopefully reassure my

17  children that you cannot hurt them or any other child ever

18  again.

19      I asked both of my children if they wanted me to

20  tell you something.  One of them looked at me in despair

21  and shook his head no.  The other one told me to tell you

22  that he hopes you rot in hell forever.

23      This is what you've done to my children.  This is

24  what you've done to our family.  Hopefully we can pick up

25  the pieces and move on.

```
 1            And I hope they take care of you wherever you're

 2   going.

 3            MR. KRUPPENBACHER:  Thank you, Your Honor.

 4            THE COURT:  Thank you.

 5            MS. GABLE:  Anyone else?

 6            THE COURT:  Any other victim statements,

 7   Miss Gable?

 8            MS. GABLE:  No, Your Honor.

 9            THE COURT:  Do you have anything you'd like to add

10   with respect to the Government's position on sentencing?

11            MS. GABLE:  Your Honor, no, I don't.  I filed a

12   sentencing memorandum, and we'll stand by that, Your Honor.

13            THE COURT:  I have reviewed it.

14            I've reviewed the defense memorandum as well.

15            Miss Parrott, do you have anything you'd like me

16   to consider in mitigation?

17            MS. PARROTT:  Excuse me, Your Honor.  If I could

18   have one moment.

19            THE COURT:  Surely.

20            MS. PARROTT:  Just some argument on our behalf in

21   addition to what I filed, Your Honor.

22            And I think Mr. Graziotti would like to address

23   the Court.

24            THE COURT:  All right.  You can do that in either

25   order.  Do you want me to hear from Mr. Graziotti first?
```

```
 1    I'm happy to do that.  Or if you'd like to make your
 2    argument first, we can take Mr. Graziotti's statement last.
 3              MS. PARROTT:  I'll let him speak first.
 4              THE COURT:  All right.  Mr. Graziotti, would you
 5    like to speak to me before I impose sentence?
 6              THE DEFENDANT:  Yes, sir, please.
 7              THE COURT:  All right.  Would you come to the
 8    microphone, to the podium with your lawyer, please.
 9              Yes, sir, if you speak directly into the
10    microphone.
11              THE DEFENDANT:  To the children that I hurt, I'm
12    extremely sorry for what I did.  Words cannot begin to
13    express the regret and remorse I have over what I did to
14    you.
15              And I apologize to the mothers and fathers who
16    trusted me with their children.  There is no excuse for my
17    reprehensible actions for which I take full responsibility.
18              I know that I've caused a tremendous amount of
19    pain and suffering.  I would give anything to be able to go
20    back and undo all of the damage that I've done.  I deeply
21    regret the things that I did.  And I'll do everything in my
22    power to make amends to those I've hurt and betrayed.
23              I knew that I had a problem, but I didn't know how
24    to get help.  I was afraid that by seeking help I would
25    lose my family, my friends, and my job.  This is yet
```

1    another example of my selfishness.

2         I was worried about me and what I might lose by

3    admitting I had a problem when I should have been worried

4    about the children and what would happen to them if I

5    didn't get the help I needed.

6         I often find it difficult to understand why there

7    are still many people who believe in me and have offered me

8    their continued support.  Some of them are here today.

9         To those people and to my family who have stood by

10   me, I also apologize for my actions.

11        I know that I have an illness and that I need

12   professional help so that nothing like this ever happens

13   again.

14        Your Honor, if I'm released from prison, I can

15   rely on my family and friends for ongoing support and

16   guidance.  With my family's emotional and financial help,

17   community supervision, therapeutic counseling, I could once

18   again become a productive member of society.

19        I have a place to live, as has been mentioned,

20   with one of my brothers where I would be away from children

21   and anyplace they congregate.

22        This brother has also offered to provide me with a

23   job so that I can begin paying any restitution that may be

24   required to my victims.

25        The last six months have definitely given me much

1    time to reflect.  I know I have a long way to go to make up

2    for what I did, and I may never be able to make things

3    right with my victims.

4            I do believe that with mental health treatment, I

5    could one day once again be trusted and live honorably.

6    And I hope and pray to one day have contact with my son

7    again, who is not a victim.  He will be an adult if I am

8    released.

9            Your Honor, I know I must be punished for my

10   crimes and that I am facing a lot of prison time.  I assure

11   you that if I'm given a second chance, I will never commit

12   another crime of any kind.  I will do whatever is necessary

13   to meet the Court's and the Bureau of Prisons'

14   requirements.  I will live a law-abiding life for the rest

15   of my days.

16           Thank you for your time and your consideration.

17           THE COURT:  Yes, sir.  Thank you.

18           You can resume your seat over there,

19   Mr. Graziotti.

20           MS. PARROTT:  Your Honor, I would like to note

21   that Mr. Graziotti has a sister and two brothers present

22   today to support him, and they've provided letters for the

23   Court's consideration.

24           THE COURT:  I have reviewed all those if I didn't

25   mention that in the record.  I've reviewed both sentencing

 1   statements submitted by counsel as well as all of the

 2   attachments.

 3          MS. PARROTT:  In the Court's consideration of what

 4   is the appropriate sentence here, the advisory guideline

 5   range being 250 years, as I suggested in my sentencing

 6   memorandum, is extremely excessive.  I think when the Court

 7   considers the purposes of sentencing, I suggest that a

 8   sentence somewhat below that would be appropriate.

 9          And I played out the history and characteristics

10   of a first offender with no criminal history, the familial

11   support, people who are willing to aid in his

12   rehabilitation.

13          Some former students, that despite what has

14   happened here, have reached out.  And he did have a

15   positive influence on their lives.

16          He wants to get counseling and treatment.  And I

17   think that's something to be said, for many people that

18   never say that.  His conduct is offensive.  It's

19   reprehensible.  It's terrible.

20          As to the victims in the production counts, he did

21   not distribute those on the Internet.  Distributed other

22   items that he received on the Internet.

23          So I guess when it comes down to it, is 250 years,

24   is it a life sentence?  Does he deserve it?  I suggest to

25   the Court that such a sentence is excessive.

```
 1              And he wants to make amends.  He has the hope of

 2    redemption.  He wants to get the counseling and treatment

 3    he needs.  And I don't think a life term of imprisonment is

 4    necessary for that.

 5              THE COURT:  Thank you, Miss Parrott.

 6              Miss Gable, is the United States going to request

 7    a separately scheduled hearing on the issue of restitution?

 8              MS. GABLE:  No, Your Honor.

 9              THE COURT:  All right.  No restitution claim?

10              MS. GABLE:  No, Your Honor.

11              THE COURT:  All right.  Is the Government aware of

12    any legal bar or impediment to proceeding with the

13    imposition of sentence?

14              MS. GABLE:  No, Your Honor.

15              THE COURT:  Miss Parrott, is the defense aware of

16    any legal bar?

17              MS. PARROTT:  No, Your Honor.

18              THE COURT:  All right.  Would you and

19    Mr. Graziotti stand, please.

20              Matthew Graziotti, the Court has inquired as to

21    whether there's any legal reason not to proceed with the

22    imposition of sentence.  I have heard the presentation from

23    the United States as well as victim impact statements.

24              I have considered memorandums submitted by the

25    United States.  I've heard argument from your lawyer.  I've
```

1    heard your allocution.  I've read and reviewed materials

2    submitted on your behalf by way of mitigation.

3           Matthew Graziotti, you are a sexual predator.

4    You've committed one of the most heinous offenses that the

5    Court has had the unfortunate responsibility to oversee.

6    And I am really at a loss to find anything in the PSR to

7    suggest any consideration by way of mitigation from a

8    guideline sentence.

9           My obligation is to consider the legal

10   requirements of not only the nature and circumstances of

11   the offense but also the history and characteristics of the

12   defendant as well as the other matters that bear on an

13   appropriate sentence.

14          That includes the protection of the public from

15   the likelihood that future offenses will be committed.  I'm

16   also obligated to take into account a sentence that is a

17   just sentence and promotes respect for the law and will

18   serve as a deterrent to others.

19          And in laboring over what I was going to do with

20   respect to the sentence in this case, I've spent a lot of

21   time trying to fashion a sentence that is sufficient but

22   not greater than necessary to achieve the objectives of

23   sentencing, which is my ultimate responsibility under the

24   law.

25          And in order to do that, in my judgment, it is

1  appropriate to sentence you to the maximum term on each of

2  the individual counts of production of child pornography

3  with respect to the individuals who are named in the

4  indictment.  That is a period of 30 years per count to run

5  consecutively.

6          I'm also going to sentence you on the production

7  and distribution counts, but I am not going to sentence

8  those counts consecutively, Miss Gable.  I'm going to

9  sentence those concurrently.

10         So I intend to sentence Mr. Graziotti to a term of

11 imprisonment of 210 years which will be a term which will

12 guarantee that Mr. Graziotti will not have an opportunity

13 during his lifetime to have any hope for release.

14         He will not be a danger again to the public.  And

15 the Court's responsibilities with respect to the imposition

16 of an appropriate sentence will be achieved.

17         Mr. Graziotti, the record, I think, adequately

18 reflects the fact that you misused your positions of trust.

19 You have inflicted a lifetime of misery on your victims as

20 well as their families.

21         You have taken advantage of the most sacrosanct

22 relationships in our society.  You've preyed on children

23 from the capacity of a youth counselor, a summer camp

24 counselor, a teacher, a Christian educator.

25         And the Court finds that the sentence is

1    sufficient but not greater than necessary to achieve the

2    objectives of sentencing.

3              In light of those factors, having pursued --

4    perused the information I've already articulated into the

5    record as well as Title 18 of the United States Code,

6    Sections 3551 and 3553, it is the judgment of the Court

7    that the defendant, Matthew C. Graziotti, hereby be

8    committed to the custody of the Bureau of Prisons to be

9    imprisoned for a term of 210 years.

10             This term consists of 30 years on each of counts

11   one through seven to run consecutive to each other, and

12   terms of 20 years on each of counts eight and nine to run

13   concurrently with each other and to counts one through

14   seven.

15             Upon release from imprisonment, in the unlikely

16   event that were to occur, you shall serve a lifetime term

17   of supervised release.  This term consists of a term of

18   lifetime supervision on counts one through nine, each term

19   to run concurrently.

20             While on supervised release, you'll comply with

21   the standard conditions adopted by the Court in the Middle

22   District of Florida.

23             You will participate in a mental health program

24   specializing in sexual offender treatment, submit to

25   polygraph testing, follow the probation officer's

1  instructions regarding the implementation of these

2  directives, and contribute to the costs of such treatment.

3          You're to register with the state sexual offender

4  registration agencies in any state where you reside, visit,

5  are employed, carry on a vocation, or are a student as

6  directed by the probation officer.

7          The probation officer shall provide the state

8  officials with any information required under the Florida

9  sexual predator and sexual offender notification and

10 registration statutes, Florida Statute 943.0435, and/or the

11 Sex Offender Registration and Notification Act, also known

12 as Title I of the Adam Walsh Child Protection and Safety

13 Act of 2006.

14         You may be directed to report to these agencies

15 personally for required processing, photographing,

16 fingerprinting, and DNA collection.

17         You are to have no direct contact with minors

18 under the age of 18 -- that's any minor, anywhere,

19 anyplace -- without the written approval of the probation

20 officer.  And you're to refrain from entering into any area

21 where children frequently congregate, including schools,

22 day care centers, theme parks, playgrounds, et cetera.

23         You're prohibited from possessing, subscribing to,

24 or viewing any images, videos, magazines, literature, or

25 other materials that depict children in the nude or in any

1    sexually explicit positions.

2          You are not to possess a computer with access to

3    any online service at any location including any employment

4    without the written approval of the probation office.  This

5    would include access through any Internet service provider,

6    bulletin board system, public/private computer network

7    system.

8          And you're ordered to permit routine inspection of

9    your computer system which should be no more intrusive than

10   is necessary to ensure compliance.

11         You're to inform any employer or third party who

12   might be impacted by this condition of the computer-related

13   restriction and the inspection provision of the condition.

14         You're ordered to submit to a search of your

15   person, residence, place of business, any storage units

16   under your control, computers, or vehicles to be conducted

17   by the probation office at a reasonable time and in a

18   reasonable manner based on any reasonable suspicion of

19   contraband or evidence of a violation of a condition of

20   your release.

21         You're ordered to advise any residents of any

22   premises that you inhabit that they may be subject to a

23   search pursuant to this condition.  Failure to submit may

24   be a ground for revocation.

25         You're prohibited from incurring any new credit

```
 1    card charges, opening additional lines of credit, or

 2    obligating yourself for any major purchases without the

 3    approval of the probation officer.  You are ordered to

 4    provide requested financial information.

 5           Having been convicted of qualifying felonies,

 6    you're to cooperate in the collection of DNA.

 7           The mandatory drug testing requirements are

 8    imposed.  You're ordered to submit to random drug testing

 9    not to exceed 104 tests per year.

10           The Court waives the imposition of a fine.

11           There's no forfeiture matter to be considered, is

12    there, Miss Gable?

13           MS. GABLE:  No, Your Honor.  There is forfeiture

14    that is consistent with the notice that the Government

15    filed.

16           THE COURT:  Just the computer equipment that's

17    associated with the offenses?

18           MS. GABLE:  Yes, it is, Your Honor.  Yes, it is.

19    And it is the equipment that is listed in the Government's

20    preliminary order of forfeiture at document 34.

21           THE COURT:  All right.  Any issues with respect to

22    forfeiture, Miss Parrott?

23           MS. PARROTT:  No, Your Honor.

24           THE COURT:  All right.  The Court will order the

25    forfeiture of the items that are identified in the
```

1    preliminary order of forfeiture and will enter a final

2    order of forfeiture with respect to that personal property.

3            It's also ordered that the defendant pay to the

4    United States a special assessment in the amount of $900,

5    which is due immediately.

6            The Court considered the advisory sentencing

7    guidelines and all the factors identified in Title 18 of

8    the United States Code, Section 3553(a)(1) through (7) and

9    finds the sentence imposed to be sufficient but not greater

10   than necessary to comply with the statutory purposes of

11   sentencing.

12           The defendant is remanded to the custody of the

13   United States Marshal to await designation by the Bureau of

14   Prisons.

15           It's my obligation to advise you, Mr. Graziotti,

16   that you have a right to appeal the sentence of the Court

17   within 14 days of today's date or the day the judgment is

18   reduced to writing, whichever is later.  Failure to appeal

19   within that 14-day period will constitute a waiver of your

20   right to appeal.

21           The Government may file an appeal from this

22   sentence.

23           In any event, during the appellate process, you're

24   entitled to the assistance of a lawyer.  If you cannot

25   afford a lawyer, one will be provided for you.

```
 1              If you cannot afford the filing fee, the Clerk of
 2    Court will be directed to accept the notice of appeal
 3    without the payment of the fee.
 4              The Court, having pronounced sentence, does either
 5    counsel for the defendant or counsel for the Government
 6    have any objection to the Court's factual findings, the
 7    sentence, or the manner in which the sentence was imposed?
 8              MS. GABLE:  No, Your Honor.
 9              MS. PARROTT:  Your Honor, for purposes of the
10    record, we would object to the sentence for being
11    unreasonable as it pertains to procedure and to substance.
12              THE COURT:  All right.  Thank you, Miss Parrott.
13              We'll be in recess.
14              (Proceedings adjourned at 3:05 p.m.)
15
16                      C E R T I F I C A T E
17
18         I certify that the foregoing is a correct
19    transcript from the record of proceedings in the
20    above-entitled matter.
21
22    s\Amie R. First, RMR, CRR
23
24
25
```